Case 4:15-cv-00166 Document 46 Filed in TXSD on 02/01/17 Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
February 01, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONNIE ORDONA, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-0166 |
| | § | |
| MEMORIAL HERMANN HEALTH SYSTEM | § | |
| d/b/a TIRR MEMORIAL HERMANN d/b/a | § | |
| MEMORIAL HERMANN TIRR, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER ON MOTION FOR RECONSIDERATION

### I. INTRODUCTION

The plaintiff, Ronnie Ordona (the "plaintiff"), a fifty-four year old, Asian Filipino male, filed the instant civil action against the defendant, Memorial Hermann Health System d/b/a Tirr Memorial Hermann d/b/a Memorial Hermann Tirr[1] (the "defendant"), alleging claims for race, national origin and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). The defendant has moved for a summary judgment on all of the plaintiff's claims. On May 2, 2016, this Court entered an Order granting the defendant's motion for summary judgment as to the plaintiff's claims for race, national origin and sex discrimination in violation of Title VII and denying the defendant's motion for summary judgment as to the plaintiff's age discrimination

---

[1] TIRR is a rehabilitation and research health facility acquired by the Memorial Hermann Health System. After its acquisition, the facility became known as TIRR Memorial Hermann. After Memorial Hermann acquired TIRR, it retained the plaintiff as an employee. (*See* Dkt. No. 17, Ex. B at ¶ 3.).

claims under the ADEA.[2] (*See* Dkt. No. 21). Thereafter, the defendant filed a motion for reconsideration of this Court's Order denying its motion for summary judgment on the plaintiff's age discrimination claim. (Dkt No. 26). The plaintiff has filed a response in opposition to the defendant's motion for reconsideration (Dkt. No. 31) and the defendant has filed a reply. (Dkt. No. 32). After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that the defendant's motion for reconsideration is **GRANTED**; this Court's previous Order denying the defendant's motion for summary judgment on the plaintiff's age discrimination claim is **VACATED in part**.

## II. FACTUAL BACKGROUND

In November 1999, the plaintiff began employment with the defendant as a respiratory therapist or respiratory care practitioner. (*See* Dkt. No. 17, Ex. A at 32:14 – 33:1.). The defendant's facility is regarded as a rehabilitation and research health facility that provides comprehensive medical rehabilitation for individuals who have experienced traumatic brain injuries, stroke, spinal cord injuries, amputations, multiple traumas, multiple sclerosis, Parkinson's disease, and other neurological or neuromuscular disorders. (*Id.*, Ex. B at ¶ 4.). As a respiratory therapist, the plaintiff's job duties included, *inter alia*: performing respiratory care procedures such as ventilator management, EKGs, blood gases procedures and general floor

---

[2] Subsequent to this Court's entry of its Order, the defendant filed a motion seeking to strike a portion of the plaintiff's affidavit containing a statement regarding his conversations with fellow respiratory therapists. Specifically, the plaintiff stated as follows:

> 8. Based on discussions with my fellow respiratory therapist, it is also my understanding that not charting or documenting the tracheotomy size for existing patients was common practice for all respiratory therapists employed by [d]efendant.

(Dkt. No. 20, Ex. A at ¶ 8.). The Court determines that the defendant's motion to strike in this regard has merit and should be granted as the statement is not based on personal knowledge, lacks foundation and contains inadmissible hearsay and thus, should be excluded. *See Khan v. Cougar Stop, Inc.*, Civ. Act. No. H-06-2862, 2007 WL 2777774, at *2 (S.D. Tex. Sept. 21, 2007) (finding that statement contained in declaration referencing "discussions with my co-workers who are employees of Defendants" "as being not based on personal knowledge, lacking in foundation and conclusory").

therapy; performing respiratory care quality assurance problem solving; completing patient assessments; ensuring reliable care to patients; and adhering to the defendant's policies, procedures and standards. (*Id.*, Ex. A at 38:20 – 39:4; *see also* Depo. Ex. 7.). At the outset of his employment, the plaintiff was provided with instructions for accessing the Memorial Hermann Healthcare System Human Resources Employee Policies on "ask HR," which sets forth the terms and conditions of employment for the defendant's various employees. (*Id.*, Ex. A at 47:11 - 15; *see also* Depo. Ex. 2.). The plaintiff also received a hard copy of the Memorial Hermann Standards of Conduct, acknowledging that he understood that it remained his responsibility to read and abide by all of the defendant's current and future policies and procedures. (*Id.*, Ex. A at 49:6 - 12; *see also* Depo. Ex. 2.). The plaintiff further acknowledged having received a copy of Memorial Hermann's Corporate Policy and Procedure EEO policy as well as its Ground Rules for Professional Etiquette, which directed the plaintiff to make patient care and customer satisfaction one of his top priorities while performing his job duties for the defendant. (*Id.*, Ex. A at 49:13 – 52:11; *see also* Depo. Ex. 4.).

During the course of his employment with the defendant, the plaintiff endured several supervisors, the most recent being Respiratory Manager Darby Cruz ("Cruz"). (*Id.*, Ex. A at 36:9 – 38:6). Cruz was hired in July of 2009 to replace the plaintiff's prior manager, Desiree Lacey. (*Id.*, Ex. B at ¶ 6.). Cruz remained the plaintiff's supervisor until his termination on July 3, 2013. (*Id.*, Ex. A at 38:2 – 6: 62:1 – 9; *see also* Dkt. No. 17, Ex. B at ¶ 6.).

In March of 2007, the plaintiff's position with the defendant became classified as a lead therapist position. (*Id.*, Ex. A at 53:18 – 25; *see also* Depo. Ex. 5.). As a lead therapist, the plaintiff was responsible for coordinating work assignments, ensuring that designated assignments were completed, attending staff meetings and reporting any shift problems and

issues to the oncoming lead therapist. (*Id.*) Eventually, the lead therapist position was supplemented and reclassified as a level III respiratory care practitioner position. (Dkt. No. 17, Ex. B at ¶ 9.).

Level III respiratory care practitioners were required to retain specific certifications, complete their duties in such a way so as to promote quality patient care and customer satisfaction, document medical records appropriately, and perform other authentication duties accurately and efficiently in accordance with the defendant's policies and procedures. (*Id.*, Ex. A at 56:3 – 19; *see also* Depo. Ex. 6.). On July 31, 2011, the plaintiff was demoted to a Level II respiratory care practitioner due to his failure to meet the certification requirements needed to maintain such status. (Dkt. No. 17, Ex. B at ¶ 10; Ex. A at 57:21 – 58:19.). As a result, he could no longer recommend basic and advanced therapeutic and diagnostic procedures, mentor, train or support other respiratory care practitioners or conduct rounds to assess the appropriateness and/or effectiveness of patient therapy. (*Id.*, Ex. A at Depo. Ex. Nos. 6 & 7.). The plaintiff never obtained recertification as a level III respiratory care practitioner and remained a level II respiratory care practitioner for the duration of his employment with the defendant. (*See* Dkt. No. 17, Ex. B at ¶ 10, Ex. A)

The record before the Court is replete with written disciplinary warnings provided to the plaintiff by his various supervisors for his failure to accurately document his patient's care and/or results obtained during his observations. (*See* Dkt. No. 17, Ex. A). After conducting routine audits of patient files, Cruz discovered that various respiratory care practitioners were not documenting the size and type of tracheotomy tubes during their daily assessments. (*Id.*, Ex. B at G). Memorial Hermann Policy RST-00017, revised in July of 2009 with Cruz's assistance, addresses the scope of respiratory patient assessments as well as the requirement that such

reassessments be performed on an ongoing basis. (*Id.*, Ex. B at G). Cruz maintains that she not only sent an e-mail in April of 2013 reminding the respiratory care practitioners of this requirement, but also held a staff meeting in April of 2013, to re-emphasize the importance of daily documenting and to address the problems associated with the respiratory care practitioners' repeated failure to adhere to such documentation requirements. (*See* Dkt. No. 17, Ex. H).

In addition to emphasizing the importance of daily documenting, Cruz asserts that she explicitly instructed the respiratory care practitioners to document tracheotomy tube sizes and types with every tracheotomy care. (*Id.*, Ex. B). The meeting agenda notes reflect Cruz's instructions and the related attendance sign-in sheet confirms that the plaintiff attended the meeting and received such instructions. (*Id.*, Ex. B at H & I). During his deposition, the plaintiff acknowledged that he attended the meeting, signed the attendance sheet, but recounts that he may have arrived late to the meeting. (*Id.*, Ex. A at 90:4 - 15).

On April 30, 2013, the plaintiff received a final written warning for not documenting in accordance with Memorial Hermann Policy RST-00017, as he had not documented the tracheotomy tube sizes and types for various patients on multiple days, including April 22, 23, 26 and 30, 2013. (*See* Dkt. No. 17, Ex. A at 96:19 – 23; Ex. 13.). In spite of his meeting with Cruz and receiving a final written warning, the plaintiff continued to omit documenting the tracheotomy tube sizes and types before each treatment. The plaintiff admittedly testified that even after receiving the written warning from Cruz, he did not document the tracheotomy size before each treatment because he still perceived the documenting requirement to be optional rather than mandatory. (*Id.*, Ex. A at 97:15 – 98:7; 108:2 - 9). On July 3, 2013, Cruz presented the plaintiff with a discharge Corrective Action Form during a meeting with him wherein she explained that he was being terminated for his numerous performance errors—namely, his

insubordination and continued failure to document the tracheotomy tube sizes and types before every treatment in accordance with Memorial Hermann Policy RST-00017. (*Id.*, Ex. A at 108:16 – 19; 113:7 - 10).

On January 13, 2014, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging claims of race, national origin, sex and age discrimination. On October 24, 2014, the EEOC issued a notice of right to sue letter to the plaintiff. On January 20, 2015, the plaintiff commenced the instant action against the defendant alleging claims for race, national origin and sex discrimination in violation of Title VII and age discrimination in violation of the ADEA.

### III. ANALYSIS AND DISCUSSION

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The ADEA makes it unlawful for an employee, who is at least 40 years old, to be discharged because of his age." *Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). In employment discrimination cases, such as the one *sub judice*, discrimination under the ADEA may be proven "by direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The Fifth Circuit has held that in cases where, as here, no direct evidence[3] of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden-shifting framework

---

[3] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad*, 309 F.3d at 897 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

established in *McDonnell Douglas Corp. v. Green* and modified by the Fifth Circuit. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 - 52 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)); *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Russell*, 235 F.3d at 222.

Under the modified *McDonnell Douglas* framework, the Fifth Circuit has stated the test as follows:

> [The plaintiff] must [first] . . . demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.

*Machinchick*, 398 F.3d at 352 (quoting *Rachid*, 376 F.3d at 312) (citations, internal quotation marks and alterations omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed.2d 105 (2000) (quoting *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089)). Thus, "[t]o avoid summary judgment, an age discrimination plaintiff must present evidence that both (1) rebuts the employer's non-discriminatory reason, and (2) creates an inference that age was a determinative factor in the challenged employment decision." *Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)).

More recently, however, the United States Supreme Court questioned the applicability of the *McDonnell Douglas* test to cases brought pursuant to the ADEA. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2352 n.2, 174 L. Ed.2d 119 (June 18, 2009). Specifically, in *Gross*, the Supreme Court rejected the application of Title VII's "motivating factor" standard to ADEA mixed-motive cases and expressly held that, in such cases, the plaintiff must "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 2351 (citing *Reeves*, 530 U.S. at 141 - 43, 147, 120 S. Ct. 2097). In support of its position, the Supreme Court reasoned that "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross*, 129 S. Ct. at 2349. To this end, the Court concluded that "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 2352.

The *Gross* Court did not address the effect of its holding on the use of the *McDonnell Douglas* burden-shifting framework in ADEA cases, but merely stated that it "has not definitely decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross*, 129 S. Ct. at 2349 n.2. The Fifth Circuit and district courts within this circuit, however, have continued to apply the *McDonnell Douglas* framework to ADEA claims premised on circumstantial evidence at the summary judgment stage. *See Cervantez v. KMGP Servs. Co. Inc.*, No. 08-11196, 2009 WL 2957297, * 3 n.8 (5th Cir., Sept. 16, 2009) (citing *Sandstad*, 309 F.3d at 896 – 97 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006) (*per curiam*) (referring to this circuit's burden-shifting standard for ADEA claims as

"well-settled")); *see also Bell v. Raytheon*, Civ. Act. No. 3:08-CV-0702-G, 2009 WL 2365454, at *4 – 5 (N.D. Tex. July 31, 2009). Thus, in the absence of further directives from the Supreme Court, this Court will apply the *McDonnell Douglas* framework in accordance with prevailing Fifth Circuit authority.

As previously set forth, "[t]o establish a prima facie case of age discrimination, 'a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (internal quotation marks and citation omitted)). Further, in order to survive summary judgment, the plaintiff must produce "evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897.

In this case, the defendant maintains that even assuming the plaintiff has established a *prima facie* case of age discrimination, his age discrimination claim still fails because he is unable to establish that its articulated reasons for terminating him were not legitimate and non-discriminatory but were a mere pretext for age discrimination. This Court agrees.

Having assumed that a *prima facie* case of age discrimination has been established, the burden now shifts to the defendant to articulate a legitimate, non-discriminatory reason for terminating the plaintiff's employment. The defendant's burden of articulating a legitimate, nondiscriminatory reason is "only one of production, not persuasion, involving no credibility assessments." *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 385 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). "To avoid dismissal on

the employer's motion for summary judgment, the employee [plaintiff] must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Patrick v. Ridge*, 394 F.3d 311, 315 - 16 (5th Cir. 2004) (internal citations omitted). An employee plaintiff may demonstrate pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves*, 530 U.S. at 143, 120 S. Ct. 2097). "In other words, after a defendant employer has met its burden of production, an employee plaintiff, like any other civil plaintiff, must now demonstrate that there is a material issue of disputed fact as to discrimination, the ultimate question *vel non*." *Patrick*, 394 F.3d at 315 – 16 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

The defendant contends that the plaintiff was terminated for insubordination and violation of its tracheotomy assessment policy, namely Memorial Hermann Policy RST-00017. In support of its position, the defendant has tendered its policy and procedures manual, the position descriptions for respiratory care practitioners, corrective action personnel forms issued to the plaintiff, monthly meeting agenda records for the April 2013 meeting and the related sign-in sheet, deposition transcript excerpts of the plaintiff's oral deposition taken on January 11, 2016, and the Declaration of Respiratory Therapy Manager Darby Cruz, the plaintiff's immediate supervisor. (*See* Dkt. No. 17). The defendant avers that it relied on this information in formulating its decision to terminate the plaintiff.

The plaintiff, in contrast, does not dispute the evidence tendered by the defendant but instead insists that the defendant has no legitimate reason for terminating him because its interpretation of the written policy is contrary to the policy's plain meaning and is inconsistent

with its longstanding practice. (*See* Dkt. No. 20 at 6 - 8). The Fifth Circuit has held, however, that "[t]he ADEA was not . . . intended to transform the courts into personnel managers [as it] cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 – 08 (5th Cir. 1988). As such, when an employee's termination is premised on accusations of misconduct and/or a violation of company policy, the relevant inquiry becomes whether the employer had a good faith belief that the employee engaged in misconduct and/or a violation of company policy and whether the employer's decision to terminate the employee was based on that good faith belief. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 - 66 (5th Cir. 1993); *see also Jackson*, 602 F.3d at 379.

    Here, the plaintiff has presented no evidence indicating that the defendant's actions in terminating him were pretextual. Neither his affidavit nor his deposition testimony refers to any age-related or age-biased comments, remarks, writings, statistics or other concrete examples tending to suggest that age was a determinative factor in the defendant's decision to terminate him. As evidence of the defendant's discriminatory motive and age-biased animus, for example, the plaintiff insinuates that the defendant's decision to disregard its own progressive policy when terminating him demonstrates that it structured its termination so as to intentionally discriminate against him. Nevertheless, case law in the Fifth Circuit makes clear that "an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (citing *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (other citation omitted)).

Moreover, although "[p]roof that an employer did not follow correct or standard procedures in the termination or demotion of an employee may well serve as the basis for a wrongful discharge action under state law," it does not necessarily establish a violation under the ADEA. *Texas Instruments*, 100 F.3d at 1182 (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir.), *cert. denied*, 510 U.S. 976, 114 S. Ct. 467, 126 L. Ed.2d 419 (1993) (internal citation omitted)). "To make out an ADEA claim, the plaintiff must establish some nexus between the employment actions taken by the employer and the employee's age. [A] bald assertion that one exists . . . simply will not suffice." *Id.*

Indeed, the plaintiff has set forth no evidence that would create a nexus amid the defendant's failure to follow its own progressive policy, its selection of him for termination, and his age; nor has he introduced evidence insinuating that the defendant structured or implemented its policy differently in cases involving younger employees. In fact, the plaintiff has failed to produce any direct evidence of discriminatory intent or any evidence whatsoever indirectly demonstrating age-related discriminatory employment practices engaged in by the defendant. Instead, he urges this Court to rely solely upon his *own* subjective belief that the defendant terminated him because of his age. When questioned during his deposition as to why he believed the defendant had discriminated against him based on his age, the plaintiff testified that he noticed that the defendant had established a pattern of terminating older people. (*See* Dkt. No. 17, Ex. A at 128:12 – 130:22). When questioned in more detail as to why he harbored such a belief, the plaintiff acknowledged that he was unaware of the specific ages of the particular individuals he had mentioned. (*Id.*). He further testified that there were "[n]o other reasons," for his belief. (*Id.* at 130:20 – 22).

Nonetheless, it is well-settled that an employee's own subjective belief of discrimination, regardless of how genuine, cannot serve as the basis for judicial relief. *See, e.g., Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (citing *Waggoner*, 987 F.2d at 1166 ("To establish pretext, a plaintiff cannot rely on his subjective belief that discrimination has occurred."); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993) (subjective belief that age discrimination was the reason for termination is insufficient to support an issue for the jury when the employer articulates an adequate nondiscriminatory reason). Likewise, the subjective perception of a fellow employee, whether a coworker or supervisor, suffers from the same defects. *See Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 96 (5th Cir. 1991); *McConnell v. Thomson Newspapers, Inc.,* 802 F. Supp. 1484, 1504 n. 26 (E.D. Tex. 1992).

The plaintiff's only contravention of the evidence presented by the defendant comes from his own uncorroborated assertions which, without more, are insufficient to create a triable issue of fact as to whether the defendant discharged him due to his age. Where, as here, the plaintiff has not presented objective evidence refuting the defendant employer's articulated legitimate, nondiscriminatory reasons, pretext cannot be established by the plaintiff's subjective perception that discrimination motivated the employer's actions. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995); *Elliott v. Group Med. & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, 104 S. Ct. 2658, 81 L. Ed.2d 364 (1984). Therefore, under the circumstances, the plaintiff has failed to establish that the defendant's articulated reasons for his termination are false--much less that they are a pretext for age discrimination. Accordingly, the defendant is entitled to a summary judgment on the plaintiff's age discrimination claim.

## IV. CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motion for reconsideration is **GRANTED**; this Court's previous Order that, in part, denied the defendant's motion for summary judgment on the plaintiff's age discrimination claim is **VACATED**. The defendant is entitled to a summary judgment on the plaintiff's age discrimination claim.

It is so **ORDERED**.

SIGNED on this 1st day of February, 2017.

_____
Kenneth M. Hoyt
United States District Judge